FILED

2008 Jan-18  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| IN RE: | } |
| | } |
| GLOBE MANUFACTURING | } |
| CORPORATION and GLOBE | } |
| HOLDINGS, INC., | }   CIVIL ACTION NO. |
| | }   07-AR-1594-W |
| Debtors, | } |
| | } |
| CARRIER CORPORATION, | } |
| | } |
| Appellant/Cross- | } |
| Appellee, | } |
| | } |
| DENNIS J. BUCKLEY, Litigation | } |
| Trustee, | } |
| | } |
| Appellee/Cross- | } |
| Appellant. | } |

**MEMORANDUM OPINION AND ORDER**

On March 28, 2007, the Bankruptcy Court of the Northern District of Alabama (the "bankruptcy court"), Hon. C. Michael Stilson, entered a final judgment in this adversary proceeding brought by appellee/cross-appellant Dennis J. Buckley ("Buckley"), litigation trustee for Chapter 11 debtors Globe Holdings Inc. and Globe Manufacturing Corp. ("Globe"), against appellant/cross-appellee Carrier Corp. ("Carrier"). Both parties bring timely appeals from that order. The court has appellate jurisdiction over this action under 28 U.S.C. § 158(a)(1). For the reasons that follow, the bankruptcy court's well-reasoned decision will be affirmed.

1

## I. Standard of Review

The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review, while its conclusions of law are subject to *de novo* review. *In re Paschen*, 296 F.3d 1203, 1205 (11th Cir. 2002).

## II. Procedural History

On January 10, 2003, Buckley filed a complaint seeking to retrieve a total of $615,831.00 from Carrier.[1] In the complaint, Buckley alleges that two payments Globe made to Carrier on a contract are avoidable as preferences pursuant to 11 U.S.C. § 547(b). Carrier raised two defenses: (1) Carrier asserted that Buckley failed to show that Globe received more because of the payments than it would have received in a Chapter 7 liquidation because Carrier held a mechanic's lien on Globe real estate; and (2) Carrier also asserted that the payments were made in the ordinary course of business under 11 U.S.C. § 547(c)(2). The bankruptcy court heard evidence and arguments of the parties at trial on November 1, 2006.

The bankruptcy court held that Buckley met its burden of proving that the two payments made by Globe to Carrier during the 90-day period prior to the filing of Globe's bankruptcy petition on January 13, 2001 were preferential and that Carrier failed to prove

---

[1] Because this case was initiated prior to the October 17, 2005 effective date for the 2005 amendments to the Bankruptcy Code, it is governed by the law as it existed prior to the 2005 amendments.

that they were made in the ordinary course of business. *Buckley v. Carrier Corp. (In re Globe Holdings, Inc.)*, 366 B.R. 186 (Bankr. N.D. Ala. 2007). However, the bankruptcy court declined to award pre-judgment interest to Buckley. *Id.* Because both parties were dissatisfied with aspects of the bankruptcy court's decision, they both exercised their right to seek appellate review in this court.

### III. Facts

The payments at issue in this adversary proceeding resulted from a contract between Globe and Carrier that called for Carrier to install a chiller plant at Globe's Falls River, Massachusetts textile plant. The contract, which was executed on June 6, 2000, called for six payments to Carrier, each of which were due "net 30 days" after the rendering of an invoice by Carrier. The timing of the invoices was keyed to specific events in the installation process. The payment schedule, including the length of the actual delay between invoicing and payment, is set out below:

| Payment Number | Payment Amount | Period between invoicing and payment |
|:---:|:---:|:---:|
| 1 | $93,928.00 | 78 days |
| 2 | $162,072.00 | 50 days |
| 3 | $250,000.00 | 51 days |
| 4 | $365,831.00 | 64 days |
| 5 | $270,121.00 | N/A |
| 6 | $108.048.00 | N/A |

Buckley seeks to recover payments three and four, which were made

3

within the 90-day preference period. Payments five and six were made by a utility company directly to Carrier and are not at issue in this case. The parties agree that the work preformed by Carrier constituted an improvement to real property within the meaning of the mechanic's lien provisions of Massachusetts law. However, Carrier's status as a creditor is at issue, because Carrier did not take any of the statutorily-required steps to create or perfect a mechanic's lien in the subject real estate. At trial, Buckley made a proffer of evidence to meet his burden of showing that the two relevant payments were a preference. Carrier conceded that Buckley met his burden, except as it relates to the liquidation test. However, the bankruptcy court accepted the proffer and denied Carrier's motion for a directed verdict. Carrier called two witnesses in support of its ordinary course of business affirmative defense.

Chris O'Connor ("O'Connor"), Carrier's financial manager for the Globe project, testified that the requirement that payment be made within "net 30 days" from the date of invoicing is a common feature in all Carrier contracts, but that the average period between invoicing and payment (the "date sales outstanding figure" or "DSO") in the eastern region of the United States is 44 days. According to O'Connor, Carrier only inquires with a customer and/or takes enforcement action, such as stopping work on a job, if an invoice has gone unpaid for approximately 90 days. O'Connor

testified that he was never made aware of any problem with the Globe account and is not aware of any enforcement action having been taken against Globe.

David Witham ("Witham") also testified on behalf of Carrier at the trial. Witham is a professional engineer who was employed by Carrier as a consultant/project manager on the Globe job. Witham testified that he had managed similar HVAC construction projects in the northeastern United States. He testified that over the last 10 years he had handled 50 to 60 similar construction jobs in the region and was generally familiar with the billing and invoicing practices of the industry. In his role as project manager, Witham testified that he would generally approve invoices for payment by owners and would hear from contractors if they were not paid. However, he testified that he did not get involved in day-to-day bookkeeping and did not know when invoices were sent or when they were paid. His general sense of payment activity was based on complaints received from unpaid contractors. Based on his general sense of payment activity in the industry, Witham testified that a 45 to 60 day delay between invoicing and payment was normal in the industry. He went on to state that a lag over 60 days would cause concern and that a lag of 90 days or more would be outside the range of normal payment practices in the industry.

At the conclusion of the trial on December 13, 2006, the bankruptcy court allowed the parties to submit post-trial briefs

and took the case under submission. A final judgment was issued on March 28, 2007.

## IV. Analysis

*A. Prima Facie Case under § 547(b)*

In order to further the goal of equal treatment of creditors, the Bankruptcy Code allows bankruptcy trustees to institute avoidance actions to recover preferential transfers made by the debtor during the 90-day period preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(b) specifies five requirements that must be met in order to classify a particular transfer as preferential, and thereby avoidable:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if-
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

As mentioned above, the fifth element ("the liquidation test") is

the only element of § 547(b) at issue in this case. Under the liquidation test, the trustee must prove that the alleged preferential transfer allowed the creditor to receive more than it would have received if the transfer had never been made and the estate had been liquidated under Chapter 7. *See Union Bank v. Wolas*, 502 U.S. 151, 155, 112 S. Ct. 527, 530 (1991). The trustee bears the burden of proving all elements of § 547(b). *See* 11 U.S.C. § 547(g).

Carrier argues that Buckley failed to prove that it received more than it would have received had the two relevant payments not been made because Carrier would have been considered a secured creditor in a Chapter 7 liquidation by virtue of its mechanic's lien rights over Globe's plant in Massachusetts. However, the bankruptcy court held that Carrier never took the steps necessary to create and perfect a mechanic's lien under Massachusetts law and that, even if it had, there would have been no equity left for the lien to attach to. In response, Carrier argues that its failure to comply with the requirements of state law is explained by the fact that it was receiving payments from Globe. Put differently, Carrier is arguing that it never had occasion to assert or perfect its mechanic's lien because it was being paid by Carrier. Despite its acknowledged failure to exercise its mechanic's lien rights under Massachusetts law, Carrier argues that it nevertheless is a secured creditor because it holds an equitable or inchoate mechanic's lien.

7

In support of this proposition, Carrier cites the court to *Official Committee of Unsecured Creditors of 360Networks (USA), Inc. v. AAF-McQuay, Inc. (In re 360Networks)*, 327 B.R. 187 (Bankr. S.D.N.Y. 2005), a case in which a bankruptcy court recognized an inchoate mechanic's lien under New York law. *See also Ricotta v. Burns Coal & Bldg. Supply Co.*, 264 F.2d 749, 750-51 (2d Cir. 1959); *Bryant v. JCOR Mech., Inc. (In re Electron Corp.)*, 336 B.R. 809, 812-13 (BAP 10th Cir. 2006); *Golfview Developmental. Ctr., Inc. v. All-Tech Decorating Co. (In re Golfview Developmental Ctr., Inc.)*, 306 B.R. 758, 768 (Bankr. N.D. Ill. 2004). *But see Precision Walls, Inc. v. Crampton*, 196 B.R. 299, 303 (E.D.N.C. 1996); *Lewis v. Custom Heating Co. (In re Joseph M. Eaton Builders, Inc.)*, 84 B.R. 56, 58 (Bankr. W.D. Pa. 1988). The courts that have recognized an equitable mechanic's lien have noted that it would be unfair to force contractors to choose between "accepting payment or taking the commercially unreasonable step of declining payment in order to perfect an inchoate statutory lien." *See 360Networks*, 327 B.R. at 192.

Property interests of parties in bankruptcy are created and defined by state law. *Butler v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979). With respect to mechanic's liens, Massachusetts law provides in pertinent part as follows:

> A person entering into a written contract with the owner of any interest in real property, or with any person acting for, on behalf of, or with the consent of such

8

> owner for the whole or part of the erection, alteration, repair or removal of a building, structure, or other improvement to real property, or for furnishing material or rental equipment, appliances, or tools therefor, shall have a lien upon such real property, land, building, structure or improvement owned by the party with whom or on behalf of whom the contract was entered into, *as appears of record on the date when notice of said contract is filed or recorded in the registry of deeds for the county or district where such land lies*, to secure the payment of all labor, including construction management and general contractor services, and material or rental equipment, appliances, or tools which shall be furnished by virtue of said contract. Said notice may be filed or recorded in the registry of deeds in the county or registry district where the land lies by any person entitled under this section to enforce a lien

Mass. Gen. Laws ch. 254, § 2 (2004) (emphasis added). The Massachusetts Supreme Judicial Court has interpreted this language to mean that a mechanic's lien does not exist under state law until the contractor records a "notice of contract" in the registry of deeds for the county in which the property is located. *See Tremont Tower Condo., LLC v. George B.H. Macomber Co.*, 767 N.E.2d 20, 23 (Mass. 2002) ("It does not appear that any form of 'lien' actually exists prior to recording a notice of contract. The contractor has a statutory right to such a lien, but the lien itself does not exist until the contractor does something to assert that right."). The recording of the notice of contract also establishes the priority of the mechanic's lien, which generally takes priority over "all other later-recorded encumbrances on the property."[2] *Id.*

---

[2] The bankruptcy court found that even if Carrier did have a perfected mechanic's lien on the Globe property, there would have been no equity for it to attach to because the property was fully encumbered by a mortgage to a secured mortgagor, which had been perfected in 1998, two years before Carrier

at 24. The Massachusetts courts have also made clear that "strict compliance with the requirements of the statute [is] required to create and enforce a mechanic's lien." *Id.* at 26; *see also Ng Bros. Constr. v. Cranney*, 766 N.E.2d 864, 869 (Mass. 2002) ("A mechanic's lien is a creature of statute and is perfected only by strict compliance with the statutory requirements."); *Nat'l Lumber Co. v. LeFrancois Constr. Corp.*, 723 N.E.2d 10, 13 (Mass. 2000) ("A mechanic's lien must be perfected and can be enforced only as provided by statute."). Because Carrier failed to record a notice of contract in connection with its work at Globe's Massachusetts plant, it does not have a statutory mechanic's lien.[3]

While Carrier urges the court to apply the logic used in *360Networks* to the facts of this case and recognize the existence of an equitable mechanic's lien, its efforts are for naught because this case is decided under Massachusetts law, not New York law. *See E & C, LLC v. Binsky & Synder, Inc, (In re J.A. Jones, Inc.)*, 361 B.R. 94, 101 (Bankr. W.D.N.C.) (recognizing that existence of equitable mechanic's lien requires application of the lien law of

---

began work at the Globe plant. *See also* Mass. Gen. Laws ch. 254, § 7(a). Consequently, the value of Carrier's lien would have been zero on the petition date, because the prior perfected mortgage exceeded the value of the real estate. While the court is inclined to agree with the bankruptcy court's reasoning, it does not reach the issue because it finds that no mechanic's lien, equitable or otherwise, ever existed.

[3] The court notes that in most, if not all, of the cases recognizing equitable mechanic's liens, the defendant creditor had a mechanic's lien, but failed to perfect it by filing the required statutory notice. Unlike the contractors in those cases, Carrier did not even meet the statutory requirement for creating a mechanic's lien.

the jurisdiction where the project is located). In *Ehrlich v. Johnson Service Co.*, 172 N.E. 508 (Mass. 1930), a case with remarkably similar facts to the case at bar, the Supreme Judicial Court of Massachusetts refused to recognize the existence of an equitable mechanic's lien. *See also Admiral Drywall, Inc. v. Cullen*, 56 F.3d 4 (1st Cir. 1995) (citing *Ehrlich* in refusing to recognize equitable mechanic's lien under Massachusetts law). Carrier argues that *Ehrlich* and *Admiral Drywall* are no longer applicable because the Massachusetts mechanic's lien law was modified in 1996. However, Carrier makes no effort to explain how the statutory modifications affect the caselaw dealing with equitable liens.

In actuality, it appears that the 1996 amendments were technical/procedural in nature and did not address the concept of an equitable lien. The mere fact that a statute is changed does not mean that all of the accumulated jurisprudence relating to the statute is automatically abrogated. In fact, because *Erhlich* and *Admiral Drywall* are based on common law, not statutory interpretation, modifications to the statutory mechanic's lien procedure would not be expected to affect the law governing equitable liens, an inherently common law concept. Therefore, it does not appear that the 1996 amendments had any effect on existing Massachusetts law as it relates to equitable liens. As such, the bankruptcy court was correct in its classification of Carrier as an

unsecured creditor and its determination that the two payments made by Globe to Carrier during the preference period were avoidable under § 547(b). Regardless of the public policy justifications supporting the concept of an equitable mechanic's lien, this court must take the law of Massachusetts as it finds it.

*B. Affirmative Defense under § 547(c)(2)*

Carrier argues that even if Buckley met his burden of proof under § 547(b), the two preferential transfers are not avoidable because they were made in the ordinary course of business. Section 547(c)(2) provides as follows:

> (c) The trustee may not avoid under this section a transfer-
> (2) to the extent that such transfer was-
>> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>> (C) made according to ordinary business terms.

The creditor bears the burden of proving all three elements of the ordinary course of business affirmative defense. See 11 U.S.C. § 547(g). In this case, the parties agree that the two preferential transfers were "in payment of a debt incurred by the debtor in the ordinary course of business" under § 547(c)(2)(A). The dispute arises under § 547(c)(2)(B) and (C).

The purpose of the ordinary course of business exception is to "leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the

12

preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *Marathon Oil Co. v. Flatau (In re Craig Oil)*, 785 F.2d 1563, 1566 (11th Cir. 1986) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 373-74 (1977), *reprinted in* 1978 U.S.C.C.A.N 5787, 6329). As the Eleventh Circuit noted in *Craig Oil*, "§ 547(c)(2) should protect those payments which do not result from 'unusual' debt collection or payment practices." *Id.* Section 547(c)(2) contains subjective and objective components. As noted by the Sixth Circuit in *Logan v. Basic Distribution Corp. (In re Fred Hawes Orginization, Inc.)*, 957 F.2d 239, 244 (6th Cir. 1992):

> The subjective prong (subsection (B)) requires proof that the debt and its payment are ordinary in relation to other business dealings between *that* creditor and *that* debtor. The objective prong (subsection (C)) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry

(emphasis in original). The bankruptcy court held that Carrier failed to meet its burden of proof on either prong. The determination of ordinary business terms is a question of fact that is subject to the clearly erroneous standard of review. *See Barrett Dodge Chrysler Plymouth, Inc. v. Cranshaw (In re Issac Leaseco, Inc.)*, 389 F.3d 1205, 1209 (11th Cir. 2004).

*1. Subjective Prong*

In determining whether preferential payments were made "in the ordinary course of business or financial affairs of the debtor and the transferee" under § 547(c)(2)(B), the court looks at all of the

circumstances surrounding the disputed payments, including the timeliness of the payments. "[U]ntimely payments are more likely to be considered outside the ordinary course of business and avoidable as preferences." *Id.* at 1567-68; *see also In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993) (noting that late payments will not generally be in the ordinary course of business). The bankruptcy court relied on the Seventh's Circuit's holding in *In re Xonics Imaging, Inc.*, 837 F.2d 763, 767 (7th Cir. 1988), for the proposition that payments made outside the terms of the contract between the debtor and creditor are "presumptively nonordinary."[4] The presumption can be overcome by "showing that late payments were the normal course of business between the parties." *Logan*, 957 F.2d at 244; *see also Yurika Foods Corp. v. UPS (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir. 1989) (noting that late payments may be considered ordinary if they "were consistent with the course of dealings between the particular parties").

In this case, it is undisputed that both preferential payments were late under the terms of the contract between Globe and Carrier, which required that payments be made "net 30 days" from the date of invoicing. The two payments at issue were made 51 and

---

[4] Although the Eleventh Circuit has never expressly held that late payments are presumptively nonordinary, it has favorably cited a Ninth Circuit bankruptcy appellate panel for the proposition that untimeliness places a payment outside the ordinary course of business "as a matter of law." *See Craig Oil*, 785 F.2d at 1568 (*citing In re Gold Coast Seed Co.*, 24 B.R. 595, 597 (BAP 9th Cir. 1982)).

64 days after invoicing respectively. O'Connor, Carrier's representative, also testified that both payments were received later than the average delay between invoicing and payment (44 days) among all Carrier customers in the eastern United States. Additionally, Carrier cannot rely on a history of prior dealings with Globe to ratify the late payments, because Carrier only received two payments from Globe before the preference period commenced. In fact, the relationship between the two parties only began approximately four months before the preference period, with the first payment being received less than two months before the start of the preference period. *See Issac LeaseCo*, 389 F.3d at 1210-11 (noting that business relationship that only began six months prior to preference period did not constitute "enduring, steady relationship"); *Logan*, 957 F.2d at 245 (noting that bankruptcy court correctly relied solely on the terms of the parties' written contract when their relationship had only lasted "less than six months").

While it is true that the tardiness of the payments constitute the only evidence of activity outside the normal course of business, the weight of authority suggests that late payments create of presumption of nonordinary business activity. Given the absence of a long-term business relationship prior to the beginning of the preference period, Carrier has failed to establish that paying late was the normal course of dealings between the parties.

15

Accordingly, the bankruptcy court was not clearly erroneous in its determination that Carrier failed to meet its burden of proof under the subjective portion of the § 547(c)(2) affirmative defense.

*2. Objective Prong*

Section 547(c)(2)(C) requires Carrier to prove that the preferential payments were made "according to ordinary business terms." The Eleventh Circuit defines "ordinary business terms" as "the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C." *Miller*, 136 F.3d at 1443 (quoting *Tolona Pizza*, 3 F.3d at 1033). Section 547(c)(2)(C) is an objective test based on normal billing practices within the relevant industry. *Id.* at 1442-43. When the debtor and creditor only had a short-term business relationship (i.e., less than six months), the court must "evaluate their dealings strictly according to industry standards." *Issac LeaseCo*, 389 F.3d at 1211; *see also Advo-System, Inc. v. Maxway Corp.*, 37 F.3d 1044, 1049-50 (4th Cir. 1994) ("But when the debtor-creditor relationship is of recent origin the industry norm becomes crucial because there is no baseline against which to compare the pre-petition transfers at issue to confirm the parties would have reached the same terms absent the looming bankruptcy.")(internal quotations marks and citations omitted). The

16

bankruptcy court ruled that Carrier failed to carry its burden of proof under § 547(c)(2)(C).

The only evidence presented by Carrier to establish the relevant industry standard was the testimony of Witham, a professional engineer who was a consultant to Carrier on the Globe project. Witham testified that, although he did not get involved in daily bookkeeping operations, his general sense, based on complaints he received from contractors, was that a delay between invoicing and payment of less than 90 days would not be outside the range of normal practices in the industry (defined as HVAC installation projects in the northeastern United States). The bankruptcy court found that "Witham's general sense of what is going on in the industry does not meet the burden required by Section 547(c)(2)(C)." *Globe*, 366 B.R. at 198.

The court finds that the bankruptcy court was not clearly erroneous in its conclusion that Witham's testimony was inadequate to meet Carrier's burden of proof. Although it is not entirely clear from the trial transcript that Witham was actually certified as an expert, even assuming *arguendo* that he was, the bankruptcy court was required to judge the credibility and adequacy of his testimony. When an expert does not provide any factual basis or statistical analysis to support his opinions, the court is entitled to reject the expert's conclusions. *See Advo-System*, 37 F.3d at 1051 (noting that creditors should not be allowed to characterize

the industry norm at a high level of generality); *Morris v. Sampson Travel Agency (In re U.S. Interactive, Inc.)*, 321 B.R. 388, 393 (Bankr. D. Del. 2005) (rejecting expert conclusions not based on facts or statistical analysis); *MGR Dist. Corp. v. Zamoiski Southeast, Inc. (In re Merry-Go-Round Enter., Inc.)*, 272 B.R. 140, 148 (Bankr. D. Md. 2000) (noting that creditor's expert should provide specific facts to support his opinions); *Sacred Heart Hosp. v. E.B. O'Reilly Serv. Corp. (In re Sacred Heart Hosp.*), 200 B.R. 114, 118-19 (Bankr. E.D. Pa. 1996) (rejecting evidence of normal business terms that is based on "vague approximations"). Witham's general impressions based on his experience in the relevant industry are insufficient to establish a range of normal business practices. Additionally, because Witham worked with Carrier on the Globe project, the bankruptcy court had cause to question his credibility.[5] When the expert is an agent or employee of the defendant, it is especially important that the expert's opinions to be supported by specific, verifiable facts. *See Merry-Go-Round*, 272 B.R. at 148. Therefore, the court will affirm the bankruptcy court's finding that Carrier failed to meet its burden of proof

---

[5] Witham's credibility is further undermined by the various, and sometimes conflicting, estimates offered in his testimony and expert report. He testified that it is not unusual for contractors to receive payments from owners in a range of 45-60 days after invoicing. However, in his expert report, Witham opines that payment is received "anywhere from 45 to 75 days" from the date of the invoice. (Tr. at 50; Carrier's Items Designated Pursuant to Rule 8009, Exh. 5.) At trial, counsel for Carrier acknowledged that the imprecision in Witham's testimony could properly be considered by the court in judging Witham's credibility. (Tr. at 46.)

with respect to the § 547(c)(2) affirmative defense.

*C. Prejudgment Interest*

In his cross-appeal, Buckley argues that the bankruptcy court abused its discretion in declining to award pre-judgment interest. While the Eleventh Circuit has never addressed the issue of whether prejudgment interest is available in a bankruptcy preference action under § 547, other circuits have held that it can be awarded at the discretion of the bankruptcy court. *See Hechinger Inv. Co. v. Univ. Forest Prods., Inc. (In re Hechinger Inv. Co.)*, 489 F.3d 568, 579-80 (3d Cir. 2007); *In re Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir. 1997); *Sigmon v. Royal Cake Co. (In re Cybermech, Inc.)*, 13 F.3d 818, 822 (4th Cir. 1994); *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993); *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1281 (8th Cir. 1988). The Eleventh Circuit has recognized that prejudgment interest can be awarded in a bankruptcy fraudulent transfer action. *See IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 709-10 (11th Cir. 2005). The *IBT* court noted that prejudgment interest is compensatory, rather than punitive, and that it has become a common practice to award prejudgment interest, "especially when transfers have been made with the actual intent to hinder, delay, or defraud creditors." *Id.* Additionally, in *IBT*, the Eleventh Circuit favorably cited to the Tenth Circuit's opinion in

*Investment Bankers*, which held that prejudgment interest can be awarded in a preference action if: 1) it would serve to compensate the injured party, and 2) it is otherwise equitable. 408 F.3d at 710 (citing *Inv. Bankers*, 4 F.3d at 1566). The bankruptcy court declined to award prejudgment interest because: 1) there was no evidence that Carrier contributed to the delay in bringing the action, 2) there was a genuine dispute as to whether the two payments made to Carrier were preferential under § 547(b), and 3) there was a genuine dispute as to whether Carrier was entitled to the ordinary course of business affirmative defense under § 547(c)(2). *Globe*, 366 B.R. at 199-200.

The reasons provided by the bankruptcy court for declining to award prejudgment interest are sound. In balancing the equities, the bankruptcy court can properly consider the validity of the parties' claims and defenses. *See Phoenix Amer. Life. Ins. Co. v. Devan*, 308 B.R. 237, 242-43 (D. Md. 2004) (noting that "courts may elect to deny prejudgment interest where the defendant has raised a valid defense to a substantial part of plaintiff's claim"); *Meeks v. Harrah's Tunica Corp. (In re Armstrong)*, 260 B.R. 454, 460 (E.D. Ark. 2001) (affirming bankruptcy court's refusal to award prejudgment interest because defendant had a meritorious affirmative defense); *Sacred Heart*, 200 B.R. at 119 (noting that valid affirmative defense justifies the denial of prejudgment interest). While agreeing with the bankruptcy court that the two

20

payments Globe made to Carrier within the preference period are avoidable, the court recognizes that the arguments made by Carrier are colorable and made in good faith. Accordingly, the court finds that the bankruptcy court did not abuse its discretion in declining to award prejudgment interest.

### V. Motion to Strike

Carrier moves to strike certain documents from Buckley's appendix. Specifically, Carrier argues that the cash collateral order and Witham's expert report should be stricken. However, Carrier concedes that the cash collateral order is part of the designated record on appeal. And, while Witham's report was not introduced as a exhibit at trial, it was before the bankruptcy court as an exhibit to Buckley's motion to strike and was designated by Carrier as an item to be included in the appellate record. *See Tolz v. Gawlick (In re Forex Fid. Int'l)*, 222 Fed. Appx. 806, 809 n.7 (11th Cir. 2007). Accordingly, the court finds that both documents implicated by Carrier's motion are part of the appellate record and were properly included in Buckley's appendix.

### VI. Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED and Carrier's motion to strike is DENIED.

DONE this 18th day of January, 2008.

21

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE